NO. 07-09-00214-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 27, 2010

---

JESSIE C. HERNANDEZ, JR., APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

---

FROM THE COUNTY COURT AT LAW NO. 1 OF LUBBOCK COUNTY;

NO. 2008-449,976; HONORABLE LARRY B. "RUSTY" LADD, JUDGE

---

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Jessie C. Hernandez, Jr., appeals his conviction, based on a jury verdict, for the offense of assault/domestic violence[1] and sentence of 365 days incarceration in the Lubbock County Jail. We affirm.

Background

On February 23, 2008, appellant and his long-time girlfriend and mother of his children, Elisavet "Evet" Arias, went out for a night of dancing. During the evening,

---

[1] See TEX. PENAL CODE ANN. § 22.01 (Vernon Supp. 2009).

appellant and Evet drank alcohol, and Evet became intoxicated. At some point during the night, appellant and Evet got into an argument. The argument escalated during the drive to appellant's mother's home, where appellant was living. The argument continued in the front yard of appellant's mother's home. Appellant's sister, Tracy Hernandez, and appellant's mother, Mary Hernandez, went out to the front yard. Mary observed that Evet had sustained injuries to her face, specifically that the area around her eyes was swollen. Tracy saw blood on Evet's face, but did not know what had happened. Eventually, appellant began arguing with Tracy and, during this argument, appellant punched out the rear window of Tracy's vehicle. Tracy was able to convince Evet to leave in order to get appellant to calm down. Tracy called 911 to ask for police assistance because her brother was intoxicated, out of control, and had beaten up his girlfriend.

Evet drove to her mother's house, where she was living. During the drive, Evet called her cousin, Kassey Reyes, and, while crying hysterically, told Kassey that appellant had beaten her up. Upon entering her mother's house, Evet's mother, Andi Arias, was awoken. When Andi saw Evet crying uncontrollably and noticed that she was bleeding, Andi called 911 "to find out what had happened." However, in this call, Andi told the 911 operator that Evet's boyfriend had beaten her up, that her face was all "beat up," and her knee was cut. Soon after Evet arrived at the house, Kassey arrived. Kassey observed that Evet's hair was messed up, she had bruises all over her face, she had scratches on her arms, and her leg was cut and bleeding.

2

Lubbock Police Corporal Timothy Spann was dispatched on a domestic violence call on February 23, 2008. He first went to Mary Hernandez's residence. When he arrived, he saw two females and a male outside, heard a lot of hollering and screaming, observed that the male's hand was bleeding profusely, and saw that the rear window of one of the vehicles was broken. Spann spoke with appellant who explained that his hand was bleeding because he had punched the car window. While Spann was speaking with appellant, he received another call from dispatch reporting that a woman had called to report that her daughter had been assaulted. Dispatch further informed Spann that the parties of this second call were related to the parties of the first call. When Spann informed appellant that he was going to the Arias residence, appellant put his hands on the car and said, "Forget it, I am going to jail anyways. Take me to jail."

Spann left other officers at the Hernandez residence and proceeded to the Arias residence. Spann spoke with Evet and observed that the area of her face from her nose to her chin was bloody. Spann also observed that Evet's nose appeared swollen and her upper lip was extremely swollen. In response to Andi and Kassey claiming that appellant had beaten Evet up, Evet stated that appellant did not beat her up, but had hit her.

Evet then told Spann about the events of the evening. She stated that she and appellant had gotten into an argument at Club Rico and that he had decided to leave with some friends. While she was sitting at the bar of the club, another man bought her a drink. Appellant apparently saw this, walked up behind Evet, and "thumped" her on the back of the head. Appellant then told her to take him home. Evet complied and

3

followed appellant into the parking lot. When they approached the vehicle, appellant turned around and punched her in the nose. Evet said that she could not recall exactly how many times appellant punched her, but it was at least four times. Evet explained that she injured her knee when she fell after appellant hit her.

After obtaining this statement from Evet, Spann radioed the officers at the Hernandez residence and told them to place appellant under arrest. When Spann informed Evet that appellant was being placed under arrest, she said, "No, no, no, he is going to blame everything on me." Evet then changed her story and told Spann that her injuries were the result of a fall.

On April 10, 2008, appellant was charged by information with the offense of assault/domestic violence. On July 24, 2008, Evet filed an Affidavit of Non-Prosecution in which she attested that she had simply fallen on February 23, 2008, and that appellant did not hit her. However, approximately one year after the February 23, 2008 incident, Evet called the Lubbock Police about another incident between her and appellant and, in this conversation, she referenced the incident in February 2008 and indicated that her baby's father had "beat her ass . . . at a club." Then, at trial, Evet testified that she had simply tripped and fallen in the parking lot of the club and had hit her knee and face on the asphalt and that appellant had not hit her. After hearing all of the evidence, the jury returned a verdict finding appellant guilty of the offense as charged in the information. The jury also heard the punishment evidence and assessed appellant's punishment at 365 days incarceration in the Lubbock County Jail.

By one issue, appellant appeals. Appellant contends that the evidence is both legally and factually insufficient to support his conviction. As appellant challenges both the legal and factual sufficiency of the evidence, we are required to conduct an analysis of the legal sufficiency of the evidence first and, then, only if we find the evidence to be legally sufficient, do we analyze the factual sufficiency of the evidence. See Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996).

Legal Sufficiency

In assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency review, an appellate court may not sit as a thirteenth juror, but rather must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).

In the present case, the jury heard evidence that Evet's story of the events of February 23, 2008, as recounted on February 23, 2008, was that she and appellant got into an argument and appellant punched her in the face at least four times. Additionally, Evet's injuries are far more consistent with having been struck by a fist than as the result of a fall. Further, the evidence establishes that Evet's multiple accounts of the events of February 23, 2008, consistently indicate that appellant hit her until Spann

5

informed Evet that appellant had been arrested, when Evet, for the first time, indicated that her injuries were the result of a fall.

Viewing all of the evidence in the light most favorable to the verdict, we find that the evidence is sufficient to allow a rational jury to find the essential elements of the offense for which appellant was charged to be true beyond a reasonable doubt. See Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. As such, we conclude that the evidence supporting appellant's conviction is legally sufficient.

Factual Sufficiency

When an appellant challenges the factual sufficiency of the evidence supporting his conviction, the reviewing court must determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding the appellant guilty beyond a reasonable doubt. See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In performing a factual sufficiency review, we must give deference to the fact finder's determinations if supported by evidence and may not order a new trial simply because we may disagree with the verdict. See id. at 417. As an appellate court, we are not justified in ordering a new trial unless there is some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict. See id. Additionally, an appellate opinion addressing factual sufficiency must include a discussion of the most important evidence that appellant claims undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). However, when a defendant's version of the facts conflicts with other evidence, it is the

6

jury's prerogative to judge the credibility of the evidence and to ascribe the weight to be given to the evidence. <u>Jones v. State</u>, 944 S.W.2d 642, 647-48 (Tex.Crim.App. 1996).

By his factual sufficiency challenge, appellant contends that the jury should have believed Evet's subsequent statements that she fell as opposed to her initial statements that appellant hit her in the face. While Evet's versions of the events of February 23, 2008, did conflict, it is the jury's prerogative to assess the credibility of the evidence and to ascribe the weight to be afforded the evidence. <u>Id</u>. As there is evidence to support the jury's determinations, even were we to disagree with the jury's verdict, we may not reverse the judgment and remand the case for a new trial. See <u>Watson</u>, 204 S.W.3d at 417.

Reviewing all of the evidence in a neutral light, we find that the evidence is sufficient to have allowed the jury to rationally find the appellant guilty beyond a reasonable doubt. <u>See id</u>. at 415. As such, we conclude that the evidence supporting appellant's conviction is factually sufficient.

## Conclusion

Concluding that the evidence supporting appellant's conviction was both legally and factually sufficient, we overrule appellant's sole issue and affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Do not publish.

7